Swank, Appellant, v. Myers, Secretary of Banking.

332

Argued May 21, 1956. Before STERN, C. J., JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

reargument refused November 17, 1956.

*E. O. Golden* and *Edward J. Steiner,* for appellant.

*Edward L. Springer,* Deputy Attorney General, and *Robert W. Smith, Jr.,* with them *Herbert B. Cohen,* Attorney General, and *Smith, Best & Horn,* for Secretary of Banking and Banking Board, appellees.

*Robert W. Smith, Jr.,* with him *Smith, Best & Horn,* for bank directors and officers.

OPINION BY MR. JUSTICE JONES, September 24, 1956:

These appeals, in the nature of certiorari, seek review of successive steps taken by the Secretary of Banking and the Banking Board of Pennsylvania in the exercise of prescribed administrative process for the disciplining of a bank official deemed to be guilty of violations of the State Banking Code.

The appellant, Boyd M. Swank, was president and director of the Vandergrift Savings and Trust Company. The action taken against him by the Secretary of Banking, whereof he complains, resulted from his conduct in entering into a written agreement with C. E. Palmer, president and principal stockholder of the Peoples Union Bank of McKeesport, Pennsylvania. By the agreement which Palmer drafted in Swank's presence, the latter agreed, in consideration of a secret fee of

$100,000.00 to be paid him by Palmer, to use his influence in obtaining for Palmer shares of the capital stock of the Vandergrift Savings and Trust Company from holders thereof at a price of $500 per share and to sell his own holdings of 810 shares of such stock to Palmer (and any additional shares he might acquire within ninety days of the date of the agreement) for $600 per share.

The agreement was entered into and signed by Palmer and Swank on November 23, 1954. It emanated from Palmer's desire to constitute the Vandergrift Savings and Trust Company a branch of the Peoples Union Bank of McKeesport. Swank succeeded in persuading the holders of 208 shares of the Trust Company stock to sell it to him at $500 per share. Shortly thereafter (*circa* mid-January, 1955), the agreement between Swank and Palmer, supposedly known to them only, in some manner became public information. The animosity toward Swank, which knowledge of the agreement at once engendered in the Trust Company's stockholders caused him to withhold further activity in pursuance of the agreement, and he induced the shareholders who had sold their stock to him at $500 per share, instituted a suit against him in Westmoreland County in an effort to obtain $100 per share more for the stock they had sold him.

On February 14, 1955, Palmer exercised his option under the agreement to buy Swank's 810 shares of the Trust Company stock at $600 per share. Swank refused to perform, but, after the draft of a bill in equity for specific performance had been exhibited to him, he complied. Thenceforth, Palmer dealt directly with the shareholders of the Trust Company, offering them $600 per share for their stock. Thus, he succeeded in acquiring, all told, 1,690 shares of the Trust Company

stock which, together with the 208 shares Swank had purchased from stockholders at $500 per share, accounted for all but 102 shares of the Trust Company's outstanding capital stock of 2,000 shares.

On March 25, 1955, Swank instituted two suits in the Court of Common Pleas of Allegheny County against Palmer and the Peoples Union Bank, jointly. In the one (an action of assumpsit) he claimed $100,000 damages for Palmer's alleged breach of their agreement of November 23, 1954, and $5,512.50 for money allegedly had and received, representing the accrued earnings on the 810 shares of Trust Company stock (transferred by Swank to Palmer) between January 1, 1955, and March 9, 1955. The other suit was in equity and sought an injunction to prevent Palmer's using the 810 shares of Trust Company stock in any way to effect Swank's removal from his office as president of the Trust Company or from reducing the emoluments of that office. The institution of the suits was followed by extensive newspaper publicity and at once came to the attention of the Secretary of Banking who promptly secured copies of the complaints which were sworn to by Swank and which set forth the facts herein related, and more in detail.

By letter of March 31, 1955, addressed to Swank, the Secretary of Banking notified him that, by reason of his participation in the transactions described by him in his Allegheny County law suits, his continuance in office as president and a director of the Vandergrift Savings and Trust Company would render the conduct of the bank's business unsafe and unsound. The Secretary thereupon demanded that Swank resign his bank offices at a special meeting of the board of directors on April 5, 1955, which the Secretary was causing to be called for that purpose. Swank responded to the

Secretary by a letter denying that the business of the bank was being conducted in an unsafe and unsound manner and questioning the Secretary's authority in the premises. The board of directors met at the time of the scheduled special meeting and removed Swank from the office of president by a duly adopted resolution after all parties in interest, including Swank and his counsel, had been heard.

It is the action of the Secretary of Banking in demanding Swank's ouster by the board of directors of the Trust Company from his offices with the bank and the board's consequent removal of him as president of the Trust Company that Swank seeks to have reviewed on the certiorari issued on his appeal at No. 6 May Term, 1956. He later filed a petition with this court requesting permission to withdraw the appeal and for an order directing the Court of Common Pleas of Westmoreland County to proceed to a final disposition of a case, there pending but in no wise involved here, which was being held in abeyance awaiting action on the instant appeals.[1] We entered an order granting the ap-

---

[1] On April 9, 1955, four days after the board of directors of the Trust Company ousted Swank from his position as president of the bank, he instituted an action in equity in the Court of Common Pleas of Westmoreland County alleging that the action of the board in depriving him of his office as president was a result of coercion and did not represent the independent judgment of the board. He prayed that the court nullify the board's action and, further, that the board be restrained from interfering with his continuance in his office as president of the bank. On December 1, 1955, the chancellor filed an adjudication and a decree *nisi* granting the prayers of the complaint. On January 12, 1956, the court en banc entered an order postponing final disposition of the case pending determination of the instant appeals which had been taken in the meantime. While the appeals are not concerned with the Westmoreland County equity suit, it is not amiss to note in this connection that Swank failed of election as a director of the bank at the annual stock-

pellant permission to withdraw the appeal, but he later formally declined so to do.

In any event, there is no procedural basis for such an appeal. The function of a certiorari is to bring up for appellate review the records and proceedings in an inferior judicial or quasi-judicial tribunal. The actions of the Secretary of Banking and the board of directors of the Vandergrift Savings and Trust Company did not entail the exercise of any judicial or quasi-judicial function but were purely administrative in character and, hence, not cognizable on certiorari: see *Newport Township School District v. State Tax Equalization Board,* 366 Pa. 603, 608, 79 A. 2d 641. There is no more authority for judicial review on certiorari of the action of a bank's board of directors than there is of the action of any incorporated body's board of directors. The motions of the Secretary of Banking and of the board of directors of the Vandergrift Savings and Trust Company to quash the appeal at No. 6 May Term, 1956, must be granted.

On April 6, 1955, the day following Swank's removal as president of the Vandergrift Savings and Trust Company by its board of directors, the Secretary of Banking wrote, repeating his demand of Swank that he resign as a director of the bank or suffer citation to the Banking Board to show cause why he should not be removed as a director. Swank refused to resign, and a citation, as forecast by the Secretary of Banking, duly issued calling on Swank to appear before the Banking

holders' meeting on January 9, 1956, and, consequently, was thenceforth incapable of being president of the bank. See Section 511 B of the Banking Code of 1933, P. L. 624, as amended, 7 PS §§19-511. In fact, the appellant, in his brief in this court at No. 5 May Term, 1956, concedes that "It is no longer possible to restore [him] to those offices [president and director of the Vandergrift Savings and Trust Company] his term having expired on January 9, 1956."

Board on May 11, 1955, to show cause why he should not be removed from his office as director of the Trust Company and the office declared vacant.

The hearing by the Banking Board was held, as scheduled, all parties in interest being present with Swank represented by counsel. Considerable testimony was taken, and, in addition, the Banking Board had before it copies of the agreement between Swank and Palmer and the several complaints that had been filed in the court proceedings that had grown out of the agreement. In an adjudication filed May 25, 1955, the Banking Board found that Swank had abused his position as an officer of the bank and had breached the duty of good faith required in his dealings with the institution and other shareholders by using his position to advance his own private interests to the detriment of the other shareholders and the institution. The Banking Board also found that, because of his breach of trust, as long as he continued to hold the office of director of the Trust Company the business of that institution would be conducted in an unsafe and unsound manner, rendering its condition unsafe and unsound. The Banking Board accordingly entered an order requiring the Vandergrift Savings and Trust Company to remove Swank from the office of director and further ordered that "the said Boyd M. Swank shall thereafter be disqualified from acting as an attorney, officer, employe, director or trustee of any institution in this Commonwealth which is subject to the supervision of the Department of Banking."

By letter of June 3, 1955, the Department of Banking, acting by the Secretary, directed Vandergrift Savings and Trust Company to remove Swank as a director as of June 6, 1955, and, on that date, a resolution of the board of directors of the Trust Company was adopt-

ed to that end. And, on June 12, 1955, the directors of the Trust Company elected a new president and a new director to succeed to the vacancies created by the ouster of Swank.

Swank appealed the adjudication and order of the Banking Board to this court at No. 5 May Term, 1956, which is the other of the two appeals presently before us. Review of final action by the Banking Board may be had in this court as on certiorari: *Delaware County National Bank v. Campbell*, 378 Pa. 311, 318, 106 A. 2d 416; *Philadelphia Saving Fund Society v. Banking Board of Pennsylvania*, 383 Pa. 253, 256, 118 A. 2d 561. But, whether it be a broad or a narrow certiorari depends upon whether the particular statute under which the complained-of substantive action has been had is silent on a right to review or expressly excludes it. We have frequently reiterated the rule that, where a statute provides for a quasi-judicial administrative determination of a controversy of a particular kind or nature and provides further that the determination by the designated agency shall be final and without right of appeal to the courts, this court will nevertheless review, as on certiorari, for questions of jurisdiction and regularity of proceedings only. We do not examine into the merits of the controversy even though it may appear that the governmental agency may have erroneously interpreted the law or misread the facts. See, e.g., *Addison Case*, 385 Pa. 48, 58, 122 A. 2d 272; *Kaufman Construction Company v. Holcomb*, 357 Pa. 514, 518, 55 A. 2d 534, and cases there cited in footnote 2.

In the present instance, the proceeding before the Banking Board, looking to the removal of Swank as a director of the Trust Company, was had under Section 501 B of the Department of Banking Code of 1933, P. L. 565, 71 PS §733-501, which provides, inter-alia, that

"The decision of . . . the Banking Board . . . shall be conclusive and not subject to any review." It follows, therefore, that our review, as on certiorari, is limited narrowly. While the proceeding before the Banking Board in the *Delaware County National Bank* case, supra, was not concerned with Section 501 B of the Department of Banking Code, cit. supra, Mr. Justice BELL there observed for the court, by way of exclusion, that the prohibition on review applied "to the question of removal of an officer, employe or director under §501B." In short, appellate review of action taken by the Banking Board under Section 501 B of the Department of Banking Code is upon a narrow certiorari. The only questions, therefore, properly now before us are those relating to jurisdiction and regularity of proceeding.

It is sufficient for present purposes to say that the Banking Board had jurisdiction and the proceedings were regular, fully comporting as they did with the requirements of Section 501 B of the Department of Banking Code. Furthermore, the matter is moot. The appellant frankly recognizes in his brief that "On January 9, 1956, the term of office of Boyd M. Swank ended and at the annual meeting of shareholders held on that day Mr. Swank did not receive a sufficient number of votes to be reelected as director." See also appellant's concession as quoted at the end of footnote 1, supra, to the effect that it is no longer possible to restore him to the offices of president and director of the Vandergrift Savings and Trust Company, his term having expired on January 9, 1956.

There is, however, one phase of the Banking Board's order that is not moot because of the enduring nature of the disqualification imposed on Swank by the Banking Board's order that he not again engage in the bank-

ing business in Pennsylvania. The appellant argues that what is thus an indefinite penalty is too harsh. The power to impose such a penalty, however, has been expressly conferred upon the Banking Board by the legislature. Section 501 B of the Department of Banking Code provides, inter alia, that "Any . . . director . . . who is removed from his office or position as provided in this section, shall thereafter be disqualified from acting as an attorney, officer, employe, director, or trustee of any institution in this Commonwealth, *for such period as the . . . Banking Board . . . shall prescribe"* (Emphasis supplied). There can be no question that the determination of the period of disqualification rests within the sound discretion of the Banking Board. As originally enacted, Section 501 B of the Code provided that removed bank officials "shall forever thereafter be disqualified . . . ." The term "forever" was deleted by the amendatory Act of April 22, 1937, P. L. 337. Thereby the duration of the period of disqualification was intentionally left to the sound discretion of the administrative tribunal and may not be inquired into here: *State Board of Undertakers v. Frankenfield,* 329 Pa. 440, 198 A. 302.

The appellant evinces concern lest the finality of the Banking Board's order against him may be used to impair his rights against Palmer under their contract of November 23, 1954, now involved in Swank's suits against Palmer and the Peoples Union Bank of McKeesport in the Court of Common Pleas of Allegheny County. Nothing herein contained is in any wise intended to adjudicate, or even impliedly pass upon, the respective rights and liabilities of Swank and Palmer, *inter se,* under their contract of November 23, 1954. Any such questions are matters for determination in their private litigation. All that is involved in the rec-

ords now before us is the action of the Secretary of Banking and of the Banking Board in respect of Swank's ouster as president and as a director of the Vandergrift Savings and Trust Company.

Appeal at No. 5 dismissed.

Appeal at No. 6 quashed.