Dauphin Deposit Trust Company, Appellant, *v.* Myers.

Argued January 14, 1957. Before Jones, C. J., Bell, Chidsey, Musmanno, Arnold and Jones, JJ.

*Arthur Littleton,* with him *F. Eugene Reader, Alton W. Lick,* and *Morgan, Lewis & Bockius,* for appellants.

*Edward L. Springer,* Deputy Attorney General, with him *Frederick G. Antoun,* Deputy Attorney General, and *Thomas D. McBride,* Attorney General for Secretary of Banking and Department of Banking, appellees.

*Arthur H. Hull, Robert L. Rubendall,* and *Hull, Leiby & Metzger,* for interested parties, appellees.

OPINION BY MR. JUSTICE BELL, March 29, 1957:

Articles of Merger of Dauphin Deposit Trust Company and Carlisle Trust Company were filed by the Banks and approved by the Department of State; thereafter the Articles were transmitted to the Department of Banking for approval or disapproval in accordance with the Banking Code. Both banking institutions are chartered under the law of Pennsylvania. Carlisle Trust Company has its principal and sole place of business in the Borough of Carlisle, Cumberland County. It has no branches. Dauphin Deposit Trust Company has its principal place of business, together with three branches, in Harrisburg, Dauphin County. Cumberland County and Dauphin County are contiguous counties. The plan of merger provided for the retention and operation of the banking office of Carlisle Trust Company in Carlisle as a *branch* of the surviving institution which was to be known as Dauphin Deposit Trust Company.

The proposed merger was disapproved by the Department of Banking in a comprehensive opinion. The basic reason given by the Secretary of Banking for disapproving the proposed merger was that there was no need for the merger since the banking facilities and services in Carlisle were adequate, and the merger would result in over-banking the community which would be detrimental and possibly disastrous to the community. From this Order of the Department of Banking, Dauphin Deposit Trust Company and Carlisle Trust Company appealed to this Court.

Section 204 of the Act of May 15, 1933,* known as the Banking Code, was repealed by the Act of December 30, 1955.** Section 204, was composed of numerous paragraphs, seven of which were lettered A,B,C,D,E, F,G. In lieu of §204, the Act of 1955 added a new and different section to the Banking Code, namely, 204.1. Section 204.1 was divided physically into many paragraphs, six of which were lettered A,B,C,D,E,F. Subsections A and B of §204.1 are the only subsections that are relevant to this case.

Section 204.1, *subsection A,* provides in material part as follows: "Branches. A. Any institution may continue to maintain and operate any branch heretofore lawfully established by such institution. If an institution is hereafter merged or consolidated with another institution or national banking association, the surviving institution, in case of merger, or the newly consolidated institution, *with the approval of the department,**** with respect to any such institutions or national banking associations, may retain and operate as branches any of their principal places of business

---

\* P. L. 624, 7 PS §819-204.
\*\* P. L. 920, 7 PS §819-204.1.
\*\*\* Italics throughout, ours.

and branches which may have been in lawful operation in the same county or in a county contiguous to the county in which the principal place of business of the institution resulting from the merger or consolidation is located on the effective date of such merger or consolidation."

The key words on which this case turns are "with the approval of the department".

Section 204.1, *subsection B,* covers the establishment and maintenance of branch banks *without merger* in the same city, borough or village in which the principal place of business of the large bank is located, and in the same or in a contiguous county. Under subsection B, a bank may establish a branch *with the prior written approval* of the Department of Banking, except that if the branch is to be located in any other city, etc. in the same county, *or* in a county *contiguous* to the county in which the principal place of business of the large bank is located, the application *must be approved by both the Department and the Banking Board.* This subsection further provides, clearly and specifically, that when a bank files an application for the establishment of a branch in the same city, etc., the Department shall approve the application "if it finds upon investigation that there is a *need* for banking services or facilities such as are contemplated by the establishment of such branch and that all requirements of this section have been complied with . . .". If the Department finds, after investigation, that the bank has not met all the requirements of the section, or that there is *not a need* for banking services or facilities such as are contemplated by the establishment of such branch, it shall disapprove the application.*

---

* It is unnecessary to review the additional provisions of subsection B since they are not pertinent.

Notwithstanding the fact that the requirements of subsection A and of subsection B are obviously very different, the Department of Banking interpreted each of them alike, i.e. each required approval of the Department if and only if the Department found that there was a *need* for banking services or facilities such as are contemplated (1) by the merger or (2) by the establishment of a branch bank without a merger. If this was the standard which the Legislature intended to prescribe in each case, it is regrettable that it did not clearly and specifically so provide in subsection A.

The language of subsection A "with the approval of the Department" is at first blush sufficiently broad to give the Department *the sole discretion, without any reasonable standards or indeed without any standards whatever,* to approve or disapprove a merger, the effect of which is to establish a branch in a contiguous County. Where the standard fixed by the Legislature is not arbitrary or unlimited, but is definite and reasonable, the delegation of power or discretion will be sustained as constitutional. In considering the standard, regard must be had to the purpose and scope of the Act, the subject matters covered therein, the duties prescribed and the broad or narrow powers granted, because those factors will often determine whether or not a sufficiently clear, definite and reasonable standard has been established. A grant of power to the Department of Banking to approve or disapprove a merger in its sole discretion, without any standards whatever, would be an illegal delegation of authority and would render subsection A unconstitutional:*

---

*Moreover, an interpretation which invalidates subsection A, would have the additional undesirable effect of prohibiting future mergers of banking institutions, the effect of which is to establish a branch, since branch banking is permissible only by statute and no statute would exist to cover such a situation.

*Holgate Bros. Co. v. Bashore,* 331 Pa. 255, 200 A. 2d 672; *Hotel Casey Co. v. Ross,* 343 Pa. 573, 578, 580, 23 A. 2d 737; *Marshall Impeachment Case,* 363 Pa. 326, 69 A. 2d 619; *Schechter Poultry Corp. v. United States,* 295 U.S. 495; *Panama Refining Co. v. Ryan,* 293 U.S. 388; *O'Neil v. Insurance Company,* 166 Pa. 72, 30 A. 945; *Hudson-Harlem Valley Title & Mtge. Co. v. White,* 8 N.Y.S. 2d 599. Cf. also: *Bell Telephone Co. v. Driscoll,* 343 Pa. 109, 21 A. 2d 912.

We must therefore examine subsection A of §204.1 more closely, in order to see whether it cannot be interpreted in a manner which carries out the Legislative intent and at the same time satisfies all Constitutional requirements: *Evans v. West Norriton Township Municipal Authority,* 370 Pa. 150, 87 A. 2d 474; *Fidelity-Philadelphia Trust Company v. Hines,* 337 Pa. 48, 10 A. 2d 553; cf. also *Hotel Casey Co. v. Ross,* 343 Pa., supra; *Dauphin Co. Grand Jury Investigation Proceedings (No. 3),* 332 Pa. 358, 2 A. 2d 809; Statutory Construction Act of May 28, 1937, P. L. 1019, §52, 46 PS §552.

In *Evans v. West Norriton Township Municipal Authority,* 370 Pa., supra, the Court said (page 158):
" ' ". . . we can declare an Act of Assembly void, only when it violates the Constitution clearly, palpably, plainly; . . ." ': Tranter v. Allegheny County Authority, 316 Pa. 65, 75, 173 A. 289. Where the meaning of an act is doubtful, and two constructions are reasonably possible, one of which will render the act constitutional and the other unconstitutional, the courts should adopt a construction which renders the statute constitutional: Fidelity-Philadelphia Trust Co. v. Hines, 337 Pa. 48, 10 A. 2d 553; Carr v. Aetna A. & L. Co., 263 Pa. 87, 106 A. 107."

It may aid us in construing the Act of December 30, 1955, which amended the Act of May 15, 1933 (the

Banking Code), by repealing §204 and adding a new and different section known as §204.1, if we consider the prior law which it sought to change. Prior to the aforesaid amendment, the law on this subject was clearly settled. Section 204 D of the Banking Code provided: ". . . A state bank 'may establish a branch . . . in any place within any county contiguous to the county in which its principal place of business is located, if the city, borough, or other community in which such branch is to be established is without adequate banking facilities, or, *in the case of a merger* or consolidation, *is without adequate banking facilities* other than an incorporated institution or national banking association which is a party to the plan of merger or consolidation . . .' ".

It will be noted that §204 D clearly and specifically set up a standard—a reasonable and proper standard —namely, the adequacy or inadequacy of banking facilities.* Thereafter, the Legislature, we repeat, repealed *all* of §204 and in lieu thereof enacted a new and different section, viz., §204.1. The most important changes occur in §204.1 A where—in the event of a merger of two banks, the effect of which is that the smaller bank becomes a branch of the larger bank— no mention is made of *need* for banking services or facilities, but the only specific requirement is that the merger is to be permitted "with the approval of the Department". Moreover, unlike the former §204 F, no reference or appeal is made to the Banking Board in cases where the Department approves the merger, and,

---

* In *Delaware County National Bank v. Campbell*, 378 Pa. 311, we interpreted §204 D to mean that "a merger may be approved if the city, borough or other community in which such branch is to be established by way of merger is without adequate banking facilities *excluding* the institutions which are a party to the plan of merger".

we repeat, no mention is made of need (or adequacy) of banking facilities or services.

In *Delaware County National Bank v. Campbell*, 378 Pa. 311, the Court said (page 325): "Part of the powers and duties of the Department of Banking, and in cases of mergers with resultant branch banking, part of the powers and duties of the Banking Board, is to determine, as the Department and Board did in the present case, whether the community served and from which a bank draws its depositors and clients has adequate banking facilities and is not overbanked. Appellees admit . . . 'As interpreted by the Banking Board in accordance with its plain terms, the clear intention of the statute in regard to establishment of branches, both by new branch and by merger, is the same: to guard against "overbanking" on the one hand, and "underbanking" on the other; . . .'. The legislature, . . . did not exclude or intend to exclude competition between banks; it intended, inter alia, to exclude such competition as would likely weaken or destroy some banks in an overbanked community and thus weaken or injure the entire banking system, to the detriment of depositors, creditors, stockholders and the public alike."

The Department of Banking in its opinion in the instant case correctly said: "In measuring banking facilities and services to determine on the one hand need which results in under-banking or on the other hand an excess of banking services which results in over-banking, due consideration must be given not only to the number of banking facilities present in a community but also to the quality of such facilities. A community may be over-banked with a few large institutions with resources in excess of the requirements of the community as well as by a larger number of smaller banks than the needs of the community justify. The

ideal situation is a sufficient number of banks to serve the requirements of the community and to maintain a competitive climate that will produce the best banking services."

Contrary to the Department's contention that the principal changes made by §204.1 were procedural (for example to eliminate in one instance a written application and reduce the time of investigation from 60 days to 30 days) it is obvious, from the entire new lengthy section and particularly from the changed language, that the legislature intended to make a substantial number of substantive changes. For example, under subsection A, an approval by the Banking Board was eliminated if the Department approved a merger, the effect of which was to establish a branch in a contiguous County; and the requirement of *need* (or adequacy or inadequacy) of banking facilities, which was specifically set forth in subsection B and in old section 204 D, was conspicuously omitted. It would therefore appear obvious that the Legislature, by the amendment of December 30, 1955, intended to make one or more important substantive changes in the law in the case of mergers.

Nevertheless, the Department of Banking concluded that the *need* or adequate facilities test still prevailed in a case such as the instant one, namely, where two banks propose to merge with the larger bank, retaining and operating as a branch the principal place of business of the smaller bank which was in a contiguous county. The Department deduces this authority and power (1) from general language in the Banking Code, general language in the Department of Banking Code, and general language in the Administrative Code, (2) from prior decisions of this Court, and (3) from §204.1 considered in conjunction with these and particularly with §1406 of the Banking Code.

The Department relies upon *Delaware County National Bank v. Campbell,* 378 Pa., supra, where this Court said (page 314) : "The Department of Banking was created not to manage or operate a bank, but to supervise a bank, and to be a watch dog in the interest of depositors, creditors, shareholders *and of the community in general."*

The Department also points out that if an application is filed for the establishment of a *branch* to be located in any place in a contiguous county, the test or standard for both the Department and the Banking Board is "a need for banking services or facilities such as are contemplated by the establishment of such branch": §204.1 B. The Department contends that if the standard for the establishment of a branch requires a finding by the Department that there is *a need* for the proposed banking services or facilities of the branch, it is equally and vitally important that the same standards and the same requirements and supervision are necessary in connection with the Department's approval or disapproval of a merger, the effect of which is to establish a branch.

The appellants contend, on the other hand, that a standard of *need* is not required, first and most important because there is no provision for such a standard under the new §204.1 A, and secondly, because the banking institutions in Cumberland County are not increased by the merger but only *existing* facilities and services are merged.

The first of appellants' contentions possesses a great deal of merit. The second is superficially meritorious, but on analysis falls. The new branch bank has the same building and virtually the same employes and personnel as the old, but it is not the same banking institution either in name or in banking facilities. Figuratively speaking, a pygmy has become a giant;

and the effect of making a giant out of a pygmy, so far as over-banking is concerned, is not substantially different from what would occur if a giant were established as a branch where no pygmy had theretofore existed.*

It is obvious that the phrase "with the approval of the Department" in §204.1 A cannot be treated as superfluous or irrelevant or meaningless; it cannot (standing alone) constitutionally give the Department of Banking an arbitrary uncontrolled power to approve or disapprove in its sole discretion—without any definite and proper standards—a merger, the effect of which is to establish a branch bank in a contiguous County; and it must be considered in conjunction with other portions of the Banking Code and perhaps other Codes in order to be sustained.

Both appellants and appellees, faced with the danger of unconstitutionality for want of a reasonable and proper standard in §204.1 A, turn for a pertinent and appropriate standard to §1406 of the Banking Code, as amended (7 PS §819-1406). Section 1406 provides: "Approval of articles of merger or consolidation by Department of Banking.

"A. Except as otherwise provided in this act, the Department of Banking shall, immediately upon the receipt from the Department of State of the articles of merger or articles of consolidation, conduct such examination as it may deem necessary to ascertain from the best sources of information at its command:

"(1) Whether the name of the surviving or new

---

* The varying contentions which were ably argued by both appellants and appellees demonstrate how unfortunate it is that the Legislature failed to clearly and specifically set forth in §204.1 A the legislative intent with respect to mergers, the effect of which is to retain (or establish) a branch bank in a contiguous county.

incorporated institution is likely to mislead the public as to its character or purpose.

"(2) Whether the consolidation or merger is made for legitimate purposes.

"(3) Whether the interests of the depositors or other creditors, and in the case of a bank, a bank and trust company, or trust company, the shareholders, are adequately protected.

"(4) Whether the surviving or new incorporated institution meets all the requirements of this act and violates none of its prohibitions applicable to a bank, bank and trust company, trust company, or a savings bank, as the case may be, incorporated under this act.
. . .

"B. Within thirty days after the receipt of the articles of merger or articles of consolidation from the Department of State, the Department of Banking shall, upon the basis of the facts disclosed by the investigation provided for by this section, either approve or disapprove such articles. It shall immediately notify the Department of State, in writing, of its action. . . ."

Appellants contend that the only question before the Department of Banking is whether or not the standards or tests laid down in §1406 have been satisfactorily complied with by the merging institutions— if they have, the Department of Banking has no discretion, but must approve the merger. The Department contends, on the other hand, that whether the merger was made for legitimate purposes and whether the new institution meets all the requirements of the Banking Code, depends, in the last analysis, on whether there is a *need* for the new or enlarged branch. In other words, it still considers that it is entitled, in the interest of supervision and of protecting the community from over-banking, to determine the adequacy or need of the banking facilities.

Pursuant to the Department's interpretation of the law, it made an investigation and held a hearing with due notice to every bank which might be affected by the proposed merger. 15 banks, as well as the Cumberland-Perry County Bankers Association, protested the proposed merger. The Department, in an able comprehensive opinion, carefully reviewed and analyzed the facts which it had exhaustively investigated. For example, the Department found that under the plan of merger the name of the surviving institution was not likely to mislead the public as to its character or purpose, and that the interests of the depositors, other creditors and shareholders of the two banking institutions would be adequately protected by the proposed merger. It also found (and appellants concede) that the primary and motivating purpose of the merger is the conversion of the office of Carlisle Trust Company at Carlisle, Cumberland County, *into a branch* of Dauphin Deposit Trust Company. It went into considerable detail to support all of its findings or conclusions. It reviewed the statement of condition of both institutions; the population of Carlisle and of Cumberland County since 1940, with their respective numbers and their percentage of gain; the assessed valuation of real estate in Carlisle and also in Cumberland County since 1940; the number of banks and their branches and their total resources, etc., in Carlisle and in Cumberland County, with their increase in capital, surplus, undivided profits and reserves, loans, deposits and total resources since 1940; the number and amount of their mortgages, the banking facilities for each person in Carlisle and in Cumberland County, which was far greater than the State average or the National average; the location of banking offices and facilities in Carlisle and in Cumberland County; and the population and growth of townships and boroughs within the

trading area of Carlisle since 1940. It likewise specifically found that the banks of Carlisle offered the same type of services that would be offered by the proposed branch, including trust services. It pointed out, with details, that the banking resources and facilities of Carlisle and of Cumberland County have grown very substantially faster than the population of Carlisle or of Cumberland County; that the banks of Carlisle have been and are now able (a) to supply all banking services and facilities needed in the Carlisle area and (b) to take care of all loans (through participation with other banks); that the Carlisle banks have stated their ability and their desire to increase their capital and banking facilities whenever required to meet any additional need for banking facilities and services in Carlisle; and finally, that the completion of the proposed merger would bring into the Carlisle area banking resources that are not needed and would result in an excess of banking facilities and services, causing overbanking of that area, to the detriment of the depositors, other creditors, and shareholders of the banks of that area and of all other interested persons and of the public in general.

Appellants find no fault with most of the findings and conclusions of the Department of Banking. Appellants, however, disagree with the finding that the present banking facilities in Carlisle are adequate and point out that there were 13 loans in the last five years which could not be serviced by Carlisle Trust Company without participation. Appellants further point out that the merger will increase tenfold the lending capacity of Carlisle Trust Company; that the personal loan business and other bankable business in the Carlisle area is rapidly increasing; that Dauphin Deposit Trust Company has for years been serving customers and several thousand depositors who live in

Cumberland County; and that this merger will enable it to more adequately service the needs of this constantly growing community. Finally, appellants vigorously contend that the question whether the merger is made for legitimate purposes means what it says; it does not mean or include the question of adequate facilities or over-banking; and consequently, the Department of Banking *exceeded its power* in so holding and therefore was without jurisdiction to make the Order complained of.

There is no doubt that the Department of Banking misinterpreted §204.1 A of the Act of December 30, 1955. That Act as we have seen repealed §204 of the Banking Code and in lieu thereof substituted a poorly drawn amendatory Act which by §204.1 A eliminated the test of "adequacy of banking facilities" or "need" and required as a standard the sole discretion of the department or under §1406 the five tests set forth in §1406. All of these five tests were adequately and fully met by the banks which applied for approval of the present proposed merger. The Department of Banking erroneously concluded that "whether the merger is made for legitimate purposes" did not have its plain and ordinary meaning but meant "whether there is *need* for the merger". That test, which was established in the former §204 and also in subsection 204.1 B of the Act of 1955, is clearly inapplicable to the language of §204.1 A whether considered alone or in conjunction with §1406.*

It follows that the decision and order of the Department of Banking must be reversed unless Subsection C of §1406 interdicts such action by this Court.

---

* It is not necessary to refer to general language in other Acts which are hopefully relied upon by the Department since it is clearly inapposite and irrelevant.

460

Appellants rely upon §1406 of the Banking Code as a connecting link—an integral part or basis of their claim under §204.1 A. Appellants cannot take advantage, as they seek to do, of subsections A and B without at the same time admitting that subsection C of §1406 likewise applies to this case. Subsection C of §1406 of the Banking Code provides: "If the Department of Banking disapproves the articles of merger . . . it shall return them to the Department of State, stating in detail its reasons for doing so. . . . *The decision of the Department of Banking shall be conclusive and not subject to review.*"

Where a statute expressly provides that there shall be no appeal or that the decision of an administrative agency or of a Court shall be final or conclusive and not subject to review "the scope of appellate review is limited to the question of jurisdiction and the regularity of the proceedings; the merits of the controversy cannot be considered even though the interpretation given to the facts or the law by the governmental agency or the court below may have been erroneous. It is only where the statute is silent on the question of appeal that a review by certiorari may be had 'in the broadest sense' and the court may consider the record, including the testimony, to determine whether the findings are supported by competent evidence and to correct any conclusions of law erroneously made:" Kaufman Construction Co. v. Holcomb, 357 Pa. 514, 55 A. 2d 534: *Delaware County National Bank v. Campbell,* 378 Pa., supra (page 317- 318). See to the same effect: *Swank v. Myers,* 386 Pa. 331, 339, 126 A. 2d 267; *Addison Case,* 385 Pa. 48, 122 A. 2d 272; *Philadelphia Saving Fund Society v. Banking Board of Pennsylvania,* 383 Pa. 253, 118 A. 2d 561; *Twenty-first Senatorial District Nomination,* 281 Pa. 273, 126 A. 566.

This appeal is permissible but is only in the nature of a narrow certiorari.*

It is of course indisputable that the proceedings by the Department of Banking in this case were regular. The Department duly complied with all the requirements of the Code and not only gave appellants due notice but even granted them an extended hearing on the merits. Jurisdiction relates to the competency of the particular administrative agency or Court "to determine controversies of the general class to which the case presented for its consideration belonged—" *Witney v. Lebanon City,* 369 Pa. 308, 312, 85 A. 2d 106; *Hellertown Borough Referendum Case,* 354 Pa. 255, 259, 47 A. 2d 273. Cf. *Gardner v. Allegheny County,* 382 Pa. 88, 95, 114 A. 2d 491; *Skelton v. Lower Merion Township,* 298 Pa. 471, 148 A. 846; *Koontz v. Messer,* 314 Pa. 434, 172 A. 457. Under the code, it is clear as crystal that the Department of Banking has the jurisdiction and the power to consider and determine controversies of the general class as well as the specific controversies and issues presented in this case.

---

*It follows that appellee's motion to quash, which is in principle ruled by the authorities hereinabove stated and also by *Equitable Loan Society Inc. v. Bell, Secretary of Banking,* 339 Pa. 449, 14 A. 2d 316, is without merit and must be dismissed.

Appellants point out that in *Delaware County National Bank v. Campbell,* 378 Pa., supra, this Court in its opinion said with respect to §1406 C of the Banking Code: "If the Department of Banking disapproves the articles of merger [without a branch bank] . . . this section has no application to the case of a merger, the effect of which is to establish a branch office or branch bank." That decision is inapplicable here because in that case §204 D and §204 F specifically covered a merger, the effect of which was to establish a branch bank and these sections being particular, prevailed over the general provisions of §1406 C of the Banking Code. However, all of §204 of the Banking Code was repealed, as above noted, by the Act of 1955.

462

There is therefore no doubt of the regularity of the proceedings or of the jurisdiction of the Department of Banking.

However an important point has been overlooked. Neither the decisions hereinabove cited nor the language of the opinions therein precludes this Court from reversing an order of an administrative agency or a judgment, order or decree of a lower Court where an excess of powers, i.e., powers beyond those granted or possessed, was exercised by such an agency or lower Court. This is such a case and for the reasons hereinabove set forth at length we must reverse the order of the Department of Banking. Cf.: *United States v. Walker,* 109 U. S. 258, 266; *Bigelow v. Forrest,* 9 Wall. 339; *Ex parte Lange,* 18 Wall. 163.

Order reversed. The Department of Banking is directed to approve the Articles of Merger and promptly notify the Department of State of its action approving said articles.