## Tate Liquor License Case.

194

Argued June 13, 1961. Before ERVIN, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., and WRIGHT, J., absent).

*William N. J. McGinniss*, Special Assistant Attorney General, with him *George G. Lindsay* and *Horace A. Segelbaum*, Assistant Attorneys General, and *Anne X. Alpern*, Attorney General, for Pennsylvania Liquor Control Board, appellant.

*Horace A. Davenport*, with him *Mabel Ditter Sellers*, for appellee.

*Matthew W. Bullock, Jr.*, Assistant City Solicitor, with him *James L. Stern*, Deputy City Solicitor, *Levy Anderson*, First Deputy City Solicitor, and *David Berger*, City Solicitor, for City of Philadelphia, amicus curiae.

OPINION BY WOODSIDE, J., September 12, 1961:

The constitutionality of the amendment to §404 of the Liquor Code of April 12, 1951, P. L. 90, made by the Act of August 25, 1959, P. L. 746, 47 P.S. §4-404, is before us for determination in this case. The Court of Quarter Sessions of Montgomery County held that the amendment constituted a delegation of legislative powers in violation of Article 2, §1 of the Pennsylvania Constitution.

The amendment added the following to §404, supra: "And provided further, That the board shall refuse any application for a new license or the transfer of any license to a new location if, in the board's opinion, such new license or transfer would be detrimental to the welfare, health, peace and morals of the inhabitants of the neighborhood within a radius of five hundred feet of the place proposed to be licensed:"

Charles E. Tate, trading as North Hills Tavern, filed an application with the Pennsylvania Liquor Control Board for the transfer of a Malt Beverage License to an establishment in Upper Dublin Township in Montgomery County, and later filed an application for a new Restaurant Liquor License for the same premises upon the surrender of the Malt Beverage License. After hearing protests, the board granted the transfer of the Malt Beverage License (which is governed by a different act than the liquor license), but refused the Restaurant Liquor License, finding the following fact: "5. The granting of a retail liquor license at this location is vigorously opposed by the Police Department and the Board of Commissioners of Upper Dublin Township, the Antioch Baptist Church, and by many residents in the immediate vicinity, on the grounds that the issuance of such a license would attract an undesirable element to the neighborhood, would increase law enforcement and parking problems, would be against the interests of the residents, would interfere with the peaceful enjoyment of their homes, and would constitute a source of annoyance to them.

"The Board is of the opinion that under all of the evidence, the issuance of a restaurant liquor license for this establishment would be detrimental to the welfare, health, peace and morals of the inhabitants of the neighborhood within a radius of 500 feet of the premises, and that, as provided by law, the application must be refused."

The applicant appealed to the court below which granted the license on the ground that its refusal was warranted only by the Act of August 25, 1959, P. L. 746, supra, which the court felt was an unconstitutional delegation of legislative power to the Pennsylvania Liquor Control Board. The board appealed to this Court, and the City of Philadelphia, which is interested in supporting the constitutionality of the amendment, assisted us by filing a brief as amicus curiae.

"Nothing but a clear violation of the Constitution will justify the judiciary in nullifying a legislative enactment. Every presumption must be indulged in its favor, and one who claims an Act is unconstitutional has a very heavy burden of proof." *Loomis v. Philadelphia School District Board,* 376 Pa. 428, 431, 103 A. 2d 769 (1954). "We can declare an Act of Assembly void, only when it violates the constitution *clearly, palpably, plainly;* and in such manner as to leave *no doubt* or hesitation on our minds." *Sharpless v. Mayor of Philadelphia,* 21 Pa. 147, 164 (1853) ; *Commonwealth of Pennsylvania Water & Power Resources Board v. Green Spring Co.,* 394 Pa. 1, 11, 145 A. 2d 178 (1958) ; *Tranter v. Allegheny Co. Authority,* 316 Pa. 65, 75, 173 A. 289 (1934) ; *Dauphin Deposit Trust Co. v. Myers,* 388 Pa. 444, 450, 130 A. 2d 686 (1957).

Article 2, §1 of the Pennsylvania Constitution provides : "The legislative power of this Commonwealth shall be vested in a General Assembly which shall consist of a Senate and a House of Representatives." As the legislative power was vested in the General Assembly by the people, that power may not be placed elsewhere except by the people through constitutional change. The General Assembly may not delegate legislative power to the judiciary, nor to the executive, nor to any independent board or commission.

Justice AGNEW in his often repeated statement set forth the law in *Locke's Appeal,* 72 Pa. 491, 498 (1873) as follows : "The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend." Former Chief Justice STERN more recently stated the rule as follows : "While the legislature cannot delegate the power to make a law, it may, where necessary, confer authority and discretion in connection with the execution of the law." *Belovsky v. Re-*

*development Authority of Philadelphia,* 357 Pa. 329, 342, 54 A. 2d 277 (1947). See also *Archbishop O'Hara's Appeal,* 389 Pa. 35, 47, 48, 131 A. 2d 587 (1957) and *Commonwealth of Pennsylvania Water & Power Resources Board v. Green Spring Co.,* supra, 394 Pa. 1, 4, 5, 145 A. 2d 178 (1958).

In the amendment before us, the legislature delegated to the Liquor Control Board the power to determine whether selling liquor at a new establishment in certain neighborhoods would be detrimental to the welfare, health, peace and morals of the inhabitants of that neighborhood.

When the legislature confers authority to determine facts upon which the law is to operate, " 'the legislative body must surround such authority with definite standards, policies and limitations to which such administrative officers, boards or commissions, must strictly adhere and by which they are strictly governed . . . . If the legislature fails, however, to prescribe with reasonable clarity the limits of the power delegated or if those limits are too broad its attempt to delegate is a nullity: Schechter Poultry Corp. v. United States, 295 U. S. 495; Panama Refining Co. v. Ryan, supra; O'Neil v. Insurance Co., 166 Pa. 72': Holgate Bros. Co. v. Bashore, 331 Pa. 255, 260, 263, 200 A. 672." *Bell Telephone Co. of Pa. v. Driscoll,* 343 Pa. 109, 116, 21 A. 2d 912 (1941).

The legislature may establish primary standards and impose upon the board the duty to carry out the declared legislative policy. *Belovsky v. Redevelopment Authority of Philadelphia,* supra, 357 Pa. 329, 342, 54 A. 2d 277 (1947). It is sufficient if the board is circumscribed by definite standards found "from the language of the statute in its entirety." *Commonwealth of Pennsylvania Water & Power Resources Board v. Green Spring Co.,* supra, 394 Pa. 1, 11, 145 A. 2d 178 (1958).

In 1847 the Supreme Court held a local option law unconstitutional on the ground that it was an unlawful delegation of legislative power to the people. *Parker v. Commonwealth,* 6 Pa. 507 (1847). By 1873, the Supreme Court concluded that such a strict limitation on the delegation of legislative power would "stop the wheels of government". As our civilization has become more complex, there have been more "things upon which wise and useful legislation must depend, which cannot be known to the law-making power, and must, therefore, be a subject of inquiry and determination outside of the halls of legislation." *Locke's Appeal,* supra, 72 Pa. 491, 499.

In the recent case of *Dauphin Deposit Trust Co. v. Myers,* supra, 388 Pa. 444, 451, 130 A. 2d 686 (1957), the Court said that the Banking Code "clearly and specifically set up a standard—a reasonable and proper standard—namely, the adequacy or inadequacy of banking facilities." In *Archbishop O'Hara's Appeal,* supra, 389 Pa. 35, 50, 131 A. 2d 587 (1957) the Court said: ". . . section 1413 of this ordinance provides, inter alia: 'In interpreting and applying the provisions of this Ordinance they shall be held to be the minimum requirements for the promotion of the health, safety, morals and general welfare of the Township.' It is this section which provides sufficient appropriate conditions and safeguards controlling the board's discretion to render valid the ordinance." See also *Clinton Management, Inc. Liquor Case,* 188 Pa. Superior Ct. 8, 14, 145 A. 2d 873 (1958).

From the passage of the Act of May 13, 1887, P. L. 108, to the date of prohibition, the courts of this Commonwealth exercised the authority given them by the legislature to grant or refuse liquor licenses. The standard established by law was found in §7 of the Act in the following language. The court shall refuse the

license, "whenever, in the opinion of the said court having due regard to the number and character of the petitioners for and against such application, such license is not necessary for the accommodation of the public and entertainment of strangers or travelers, or that the applicant or applicants is or are not fit persons to whom such license should be granted; . . ."

The standard of necessity recognized during those many years was less definite than the standards prescribed for the board in the provision of the Liquor Code now before us.

The legislature here provided that a liquor license should be refused if the issuance would be detrimental to the welfare, health, peace and morals of the inhabitants of the neighborhood within a radius of five hundred feet, and gave to the Pennsylvania Liquor Control Board the power to determine this fact. The board is given a fact to determine, and when the fact is determined, the law must be applied as set forth in the statute.

The court below believed that it had support for its position in *Kellerman v. Phila.*, 139 Pa. Superior Ct. 569, 13 A. 2d 84 (1940) ; *Bell Telephone Co. of Pa. v. Driscoll*, supra, 343 Pa. 109, 21 A. 2d 912 (1941) ; and *Holgate Bros. Co. v. Bashore*, supra, 331 Pa. 255, 200 A. 672 (1938), but it gives most space to Judge ERVIN's dissent in *Obradovich Liquor License Case*, 180 Pa. Superior Ct. 383, 387, 119 A. 2d 839 (1956).

In each of the first three cases, the court examined a statute in which the legislature had authorized a new regulation to be applied to legitimate private businesses by a governmental agency without restriction as to the circumstances under which the law was to operate. This has little relation to the amendment here under consideration, which specifies the action to be taken upon the determination of a definite fact. A dissenting opinion is not authority upon which a party can rely.

It is argued that a board may conclude that the issuance of all licenses would be "detrimental to the welfare, health, peace and morals of an inhabitated neighborhood." Although there are people who believe that the issuance of all licenses is detrimental, and although we have said that the liquor business is unlawful except as permitted by statute, *Tahiti Bar, Inc. Liquor License Case,* 186 Pa. Superior Ct. 214, 216, 142 A. 2d 491 (1958), nevertheless, the Commonwealth provides by statute for the issuance of liquor licenses. By doing so, the legislature established the principle that a licensed establishment is not ordinarily detrimental to the welfare, health, peace and morals of the inhabitants of the neighborhood, but only when the nature of the neighborhood and the nature of the place to be licensed are such that the issuance would be detrimental. The board could not, as the court below feared, refuse all licenses in neighborhoods with inhabitants within 500 feet of the place proposed to be licensed. If the board acts arbitrarily, capriciously or in violation of positive law, it will be called to account for its defection. *Katzin v. McShain,* 371 Pa. 251, 253, 89 A. 2d 519 (1952).

This brings us to the question of whether the evidence supports the finding of the board that the issuance of the license would be detrimental, or whether the board abused its discretion in this case. The court below said, concerning the evidence taken before it, that "The protestants included public officials, church officers, church members, nearby residents of the premises, and to say the least the protest was long, loud, vigorous and impressive." That the court recognized the protests as long, loud and vigorous is not important, but that they were "impressive" indicates that their testimony was not without merit. Among those expressing objection were the Police Department, the Township Board of Commissioners and the Antioch Baptist Church. There had been a fight on the applicant's

premises, and a fugitive from justice was captured there. The Chief of Police thought a liquor license at the location would attract more undesirable people. This, and other evidence, warranted a conclusion that the issuance of a liquor license at the particular establishment would be detrimental to the welfare, health, peace and morals of the inhabitants of the neighborhood.

The order of the court below is reversed, and the liquor license is refused.