## Commonwealth, Appellant, *v.* Cherney.

Submitted September 24, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*J. L. Heaton, Stuart A. Liner, Reynold J. Kosek,* and *Anthony J. Maiorana,* Assistant Attorneys General, and *Israel Packel,* Attorney General, for Commonwealth, appellant.

*Henry Ray Pope, III,* District Attorney, for Clarion County, appellant.

No brief submitted for appellee.

OPINION BY MR. JUSTICE EAGEN, November 26, 1973:
This is an appeal by the Commonwealth of Pennsylvania from an order of the Court of Common Pleas,

Criminal Division, of Clarion County, quashing a summary conviction proceeding.[1] The facts are as follows:

Charles Cherney was charged with violating Section 1002(b)(8) of The Vehicle Code [Act of April 29, 1959, P. L. 58, §1002, as amended, 75 P.S. 1002(b)(8) (hereinafter referred to as Code)] for operating a motor vehicle at a speed of 89 miles per hour in a zone where the lawful speed was 65 miles per hour. After a hearing before a magistrate, he was adjudged guilty of the speeding violation and ordered to pay a fine of $10 and costs. Cherney appealed to the Court of Common Pleas of Clarion County. He then filed a motion to quash the proceeding and the court granted the motion ruling Section 1002(b)(8) of the Code was unconstitutional as an unlawful delegation of legislative power. The court also ruled Section 618(b)(2) of the Code[2] was unconstitutional for the same reason. The Commonwealth filed this appeal.[3]

Turning our attention first to the trial courts ruling that Section 618(b)(2) of the Code is unconstitutional, we rule the validity of this statutory provision was not properly before the court. Section 618(b)(2) deals with the power of the Secretary of Transportation to suspend an operator's license if it is found that the operator has violated certain provisions of the Code. In the instant case, Cherney's operators license had not been revoked and it had not been suspended. This was not a justiciable issue because Cherney had not then been affected by the operation of this section of the

---

[1] Since an order granting a motion to quash a summary proceeding is not an order in the nature of a not guilty verdict or acquittal, the Commonwealth may appeal. See *Commonwealth v. Haines*, 410 Pa. 601, 190 A. 2d 118 (1963).

[2] Act of 1959, supra. 75 P.S. §618(b)(2).

[3] Appellate jurisdiction is in this Court under the provisions of Article II, §202(9) of the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P. L. 673, No. 223, art. II, §202, 17 P.S. §211.202.

Code. The fact that at some future time this section may operate to suspend his license is presently of no significance. See generally *Pittsburgh Outdoor Advertising Co. v. Clairton*, 390 Pa. 1, 133 A. 2d 542 (1957).[4]

We now focus our attention on Section 1002(b)(8) of the Code, which the trial court ruled was unconstitutional as an unlawful delegation of legislative power. This section provides:

"The Secretary of Highways [Transportation] may, after due investigation, establish any speed limit on State highways where traffic conditions or other conditions of the highway make it safe to operate motor vehicles at the speeds other than as provided by this act.

"Any such established speed limit shall be indicated by the erection of official signs, spaced not less than one-eighth (1/8) of a mile apart, on the right-hand side of the highway facing the traffic to be controlled, and at the end of the speed zone, there shall be an official sign indicating the end of such speed zone, except that on limited access highways the signs shall be placed at the beginning and end of said limited access highways and at reasonable intervals in the discretion of the Secretary of Highways [Transportation]." Act of 1959, supra, 75 P.S. §1002(b)(8). The court reasoned both paragraphs of this section were an unlawful delegation of power because the legislature had not provided, with clarity, the limits of the secretary's power either to fix the speed limit or for the placement of signs on the highway. We disagree.

---

[4] In *Knup v. Philadelphia*, 386 Pa. 350, 126 A. 2d 399 (1956), Mr. Chief Justice STERN stated: "[I]t is equally well established that a court will take jurisdiction only in a case in which a challenged statute, ordinance, or rule of court has been actually applied to a litigant; it does not undertake to decide academically the unconstitutionality or other alleged invalidity of legislation until it is brought into operation so as to impinge upon the rights of some person or persons." Id. at 353, 126 A. 2d at 400.

It is well settled the legislature of this Commonwealth may not delegate its power to legislate. Article II, Section 1 of the Constitution of Pennsylvania sets forth, the foundation from which the non-delegation rule comes, in the following manner: "The legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives." It is equally well settled, however, that the legislature, where necessary, may confer authority and discretion in another body in connection with the execution of a law. In this regard, this Court long ago in *Locke's Appeal*, 72 Pa. 491 (1873), stated: "The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. To deny this would be to stop the wheels of government. There are many things upon which wise and useful legislation must depend, which cannot be known to the law-making power, and must, therefore, be a subject of inquiry and determination outside of the halls of legislation. Hence, the necessity of the municipal divisions of the state into counties, townships, cities, wards, boroughs, and districts, to which is committed the power of determining many matters necessary, or merely useful, to the local welfare. . . . If a determining power cannot be delegated, then there can be no power delegated to city councils, commissioners, and the like, to pass ordinances, by-laws and resolutions in the nature of laws, binding and affecting both the persons and property of the citizens. If a determining power cannot be conferred by law, there can be no law that is not absolute, unconditional and peremptory; and nothing which is unknown, uncertain and contingent can be the subject of the law." *Id.* at 498-99. For the legislature grant of authority or discretion to be valid, the legislation granting such authority must contain

adequate standards which will guide and restrain the exercise of the delegated administrative functions.[5] In determining whether adequate standards have been established, we are not limited to the mere letter of the law, but must look to the underlying purpose of the statute and its reasonable effect.[6]

Under analysis sufficient standards emerge from the instant statute to bring it within the constitutional mandate. Turning to the first paragraph of the section, the secretary, after due investigation has the authority and discretion to establish the speed limit "where traffic conditions or other conditions of the highway make it *safe* to operate motor vehicles" at a speed other than that specifically provided for in the statute.[7] The key word is "safe" and when closely examined the primary standard of safety emerges from the statute. It is clear the legislature was attempting to establish a law which would provide speed limits to promote safety on the highways. There can be no other meaning intended but that the secretary must determine, on the basis of the particular characteristics of a highway and his expert knowledge in the field of transportation, whether raising a speed limit on certain highways will promote safety and advance the steady flow of traffic. Moreover, in applying this guideline, the secretary need only look to Section 1002(b)(1) through Section 1002(b)(7) to seek legislative guidance on what the legislature believes to be safe speeds in certain rural and urban

[5] See *Chartiers Valley Joint Schools v. Allegheny County Board of School Directors*, 418 Pa. 520, 211 A. 2d 487 (1965) ; *Archbishop O'Hara's Appeal*, 389 Pa. 35, 131 A. 2d 587 (1957) ; *Belovsky v. Redevelopment Authority*, 357 Pa. 329, 54 A. 2d 277 (1947) ; *Holgate Brothers Co. v. Bashore*, 331 Pa. 255, 200 A. 672 (1938).

[6] See *Pennsylvania Water & Power Resources Board v. Green Spring Co.*, 394 Pa. 1, 145 A. 2d 178 (1958).

[7] See Act of 1959, supra, 75 P.S. §1002(b)(1)-(b)(7).

areas,[8] and Section 1002(a) provides many factors which the legislature deems of importance.[9] In light of the clear legislative purpose of safety, and the factors enumerated in the other sections of the Code, there is no question in our view, that the first paragraph is a valid grant of authority.

Turning our attention now to the second paragraph of Section 1002(b)(8), we note this states if the secretary establishes a speed limit other than that provided for in the Code, he is required to give notice of this speed limit by the erection of official signs on the highway so effected, and said signs must be spaced not less than 1/8 of a mile apart and at the end of such speed zone and at reasonable intervals on limited access highways. On other than limited access highways, the signs must be spaced no less than 1/8 of a mile apart. As to this, there is no discretion. The only discretion given on other than limited access highways is the secretary may cause the erection of signs at distances more than 1/8 of a mile apart.[10] Thus, clearly the thrust of this paragraph is to mandate the secretary to give the operator of a vehicle notice of the allowable increase in speed. The primary standard must again be safety, and this is an adequate standard.

We seriously question whether the legislature could have provided any standard other than "safety". Certainly, the non-delegation rule does not require the

---

[8] The legislature specifically established speed limits for types of highways in given areas. See Act of 1959, supra, 75 P.S. §1002 (b)(1)-(b)(7).

[9] See Act of 1959, supra, 75 P.S. §1002(a).

[10] We note there is no question in the instant case concerning the placement of signs so as to give adequate notice to Cherney. It was never asserted below the signs were placed in such a manner so as not to give proper notice to Cherney. We are strictly concerned with the validity of the statute with respect to the issue of delegation of power.

legislature to pass a law providing a speed limit for every highway in the Commonwealth, and specifically designating where the speed limit signs are to be erected. Each highway has its own characteristics and what may be safe speed on one highway may be unsafe on another. Short of passing individualized laws for each highway, we fail to see what more could have been expected of the legislature.[11]

Order reversed and record remanded for further proceedings.

---

[11] This Court has on other occasions sustained statutes where legislative guidelines were challenged as inadequate. See generally *DePaul v. Kauffman*, 441 Pa. 386, 272 A. 2d 500 (1971) [unfit for human habitation]; *Chartiers Valley Joint Schools v. Allegheny County Board of School Directors*, supra [best interest of the educational system]; *Pennsylvania Water & Power Resources Board v. Green Springs Co.*, supra [potentially endanger life or property]; *Dauphin Deposit Trust Co. v. Myers*, 388 Pa. 444, 130 A. 2d 686 (1957) [adequacy or inadequacy of banking facilities]; *Belovsky v. Redevelopment Authority*, supra [blighted]; *Fisher's Petition*, 344 Pa. 96, 23 A. 2d 878 (1942) [fair wages]. See also *Tate Liquor License Case*, 196 Pa. Superior Ct. 193, 173 A. 2d 657 (1961) [detrimental to welfare, health, peace and morals of the neighborhood].