## Tahiti Bar, Incorporated Liquor License Case.

Argued March 26, 1958. Before RHODES, P. J., GUN-THER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (HIRT, J., absent).

*Edwin P. Rome*, with him *Morris L. Weisberg*, and *Blank, Rudenko & Klaus*, for appellant.

*Lois G. Forer*, Deputy Attorney General, with her *George G. Lindsay*, Assistant Attorney General, *Russell C. Wismer*, Special Assistant Attorney General, and *Thomas D. McBride*, Attorney General, for Pennsylvania Liquor Control Board, appellee.

OPINION BY ERVIN, J., June 11, 1958:

This is an appeal by Tahiti Bar, Incorporated, from an order of the court below dismissing an appeal by the licensee from an order of suspension entered by the Pennsylvania Liquor Control Board. The court below found as a fact "that the entertainment in each instance· here was lewd, immoral or improper" and that "The entertainment in each of these cases was a predominant appeal to prurient interest." The entertainment consisted of various dance routines described as "bumps and grinds" by female entertainers who had removed practically all of their clothing. Article IV of the Liquor Code deals with licenses and regulations.

Section 493 (47 PS §4-493) provides in pertinent part that it shall be unlawful: "(10) . . . for any licensee, under any circumstances, to permit in any licensed premises any lewd, immoral or improper entertainment, regardless of whether a permit to provide entertainment has been obtained or not."

The defendant contends (1) that the language is unconstitutionally vague, (2) that the entertainment was not obscene and (3) that it was entitled to a jury trial.

At the outset it should be recognized that this case involves the temporary suspension of a liquor license. It is not a case where a book, magazine or moving picture has been restrained before its distribution or exhibition. It is not even a case where a criminal penalty is involved. It is difficult for us to comprehend how an "exotic" dance is in any way related to freedom of speech or press. The liquor business is unlawful and its conduct is only lawful to the extent and in the manner permitted by statute: *Sawdey Liquor License Case,* 169 Pa. Superior Ct. 214, 82 A. 2d 713. A liquor license is a privilege and not a property right: *Cavanaugh v. Gelder,* 364 Pa. 361, cert. den. 340 U. S. 822, 72 A. 2d 85; *Spankard's Liquor License Case,* 138 Pa. Superior Ct. 251, 10 A. 2d 899. In the granting and revocation of liquor licenses under the police power, the Commonwealth may establish the regulations and terms upon which the license may be granted and retained: *Com. v. Speer,* 157 Pa. Superior Ct. 197, 42 A. 2d 94.

In *Cavanaugh v. Gelder,* supra, at page 366, our Supreme Court said: "It [the legislature] had the power to absolutely forbid or to permit under specified conditions, entertainment in licensed establishments."

Was the language used in the Liquor Code, prohibiting entertainment upon the licensed premises which

was *"lewd, immoral or improper"* (emphasis added), so vague as to be prohibited by the first and fourteenth Amendments to the Federal Constitution? We think not. The court below treated these words as interchangeable synonyms for "obscene." Certainly the word "lewd" is a synonym for "obscene" and vice versa.

In *Roth v. United States, Alberts v. California,* 354 U. S. 476, 1 L. Ed. 2d 1498, 77 S. Ct. 1304, it was held that obscenity is not within the area of constitutionally protected speech or press. In the majority opinion written by Mr. Justice BRENNAN, he said (77 S. Ct. 1304, 1309) : "But implicit in the history of the First Amendment is the rejection of obscenity as utterly without redeeming social importance. This rejection for that reason is mirrored in the universal judgment that obscenity should be restrained, reflected in the international agreement of over 50 nations, in the obscenity laws of all of the 48 States, and in the 20 obscenity laws enacted by the Congress from 1842 to 1956. This is the same judgment expressed by this Court in Chaplinsky v. New Hampshire, 315 U. S. 568, 571-572, 62 S. Ct. 766, 769, 86 L. Ed. 1031 : '. . . There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These include the *lewd* and *obscene.* . . . It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality. . . .' " (Emphasis added)

In *Com. v. Randall,* 183 Pa. Superior Ct. 603, allocatur refused, 184 Pa. Superior Ct. 603, cert. den. 78 S. Ct. 539, 133 A. 2d 276, we recently held that the Act of June 3, 1953, P. L. 277, §1, 18 PS §4532, which

provides that whoever by any act corrupts or tends to corrupt the morals of any child under the age of 18 years is guilty of a misdemeanor, is not so vague and indefinite that it violates the Federal Constitution. In that case, at page 610, we said: "In the censorship cases the courts were concerned not only with the question of whether the language in the statute was so vague and indefinite as to constitute a denial of due process but also with that part of the Constitution which has to do with the right of free speech. In the present case we are not concerned with the freedom of speech provision. We are concerned only with the question of whether the statute which prohibits any acts which corrupt or tend to corrupt the morals of a child under 18 years of age is sufficiently clear and definite to advise the public of the proscribed conduct."

The statute involved in the *Roth* case was the federal obscenity statute which declares to be unmailable "Every *obscene, lewd, lascivious, or filthy* book, pamphlet, picture, paper, letter, writing, print or other publication of an *indecent character*; . . . ." (Emphasis added) In the *Alberts* case, the California Penal Code made anyone who "writes, . . . publishes . . . any *obscene or indecent* writing, paper, or book . . . ." guilty of a misdemeanor. The Supreme Court of the United States found little difficulty with the use of the language in either statute. The words used in the Pa. Liquor Code provide substantially the same concept as do the words of the federal statute or the California statute and the words, taken together, are sufficiently precise. We are of the opinion that the words used in the Liquor Code, when taken together, are sufficiently clear to enable any ordinary person to understand what kind of entertainment is proscribed. The court below, in its opinion, expressly found that the entertainment "was a predominant appeal to prurient inter-

est." In its opinion the court below made express reference to the *Roth* and *Alberts* cases hereinbefore referred to and we are convinced that the proper standard for evaluating the entertainment was used.

The entertainment, as shown by undisputed evidence, was lewd or obscene as well as immoral under any definition of these terms. In *Roth v. U. S.,* supra, at page 1309, Mr. Justice BRENNAN said: "It is strenuously urged that these obscenity statutes offend the constitutional guaranties because they punish incitation to impure sexual *thoughts,* not shown to be related to any overt antisocial conduct which is or may be incited in the persons stimulated to such *thoughts.* In Roth, the trial judge instructed the jury: 'The words "obscene, lewd and lascivious" as used in the law,. signify that form of immorality which has relation to sexual impurity and has a tendency to excite lustful *thoughts.*' (Emphasis added.) In Alberts, the trial judge applied the test laid down in People v. Wepplo, 78 Cal. App. 2d Supp. 959, 178 P. 2d 853, 855, namely, whether the material has 'a substantial tendency to deprave or corrupt its readers by inciting lascivious *thoughts* or arousing lustful desires.' (Emphasis added.) It is insisted that the constitutional guaranties are violated because convictions may be had without proof either that obscene material will perceptibly create a clear and present danger of antisocial conduct, or will probably induce its recipients to such conduct. But, in light of our holding that obscenity is not protected speech, the complete answer to this argument is in the holding of this Court in Beauharnais v. People of State of Illinois, supra, 343 U. S. at page 266, 72 S. Ct. at page 735: 'Libelous utterances not being within the area of constitutionally protected speech, it is unnecessary, either for us or for the State courts, to consider the issues behind the phrase "clear and

present danger." Certainly no one would contend that obscene speech, for example, may be punished only upon a showing of such circumstances. Libel, as we have seen, is in the same class.' " If we should employ the standard suggested by the appellant, being that of the American Law Institute, Model Penal Code, §207.10(2) (Tent. Draft No. 6, 1957), we would still conclude that the entertainment in this case was lewd or obscene. In A.L.I. "obscenity" is defined as follows: "A thing is obscene if, considered as a whole, its predominant appeal is to prurient interest, i.e., a shameful or morbid interest in nudity, sex or excretion, and if it goes substantially beyond customary limits of candor in description or representation of such matters." Customary candor certainly does not include "bumps and grinds" by a female entertainer who is practically unclothed, in a bar late at night when we assume the moral fiber of the male patrons has been substantially weakened by the introduction of copious quantities of alcohol. The A.L.I. further provides that it shall be admissible to show the following factors:

"(a) the character of the audience for which the material was designed or to which it was directed." In the present case, the audience consisted of male patrons of an ordinary bar. Under this standard, a select audience of college professors or aesthetics engaged in watching esoteric dances might view nude dancers engaging in erotic motions and gestures and such a performance, under the circumstances, would not be considered obscene. There is no suggestion in the record that the purpose of this entertainment was other than to appeal to the prurient interest of the patrons of the bar or that the character of the patrons of this bar was in any way special or entitled to unusual consideration.

"(b) . . . .

"(c) artistic, literary, scientific, educational or other merits of the material." This is an obvious effort to protect works of scientific or artistic merit which might otherwise be considered as obscene by illiterate or semi-literate censorship groups. This subsection, however, certainly does not apply to the entertainment here described.

"(d) . . . .

"(e) appeal to prurient interest, or absence thereof, in advertising or other promotion of the material." The sole purpose of the entertainment in the case at bar was for the promotion of the sale of liquor.

"(f) purpose and reputation of the author, publisher or disseminator." This subsection is inapplicable to the present case.

The appellant was not entitled to a jury trial. In *Kingsley Books v. Brown*, 354 U. S. 436, 1 L. Ed. 2d 1469, 77 S. Ct. 1325, in an opinion written by Mr. Justice FRANKFURTER, the Supreme Court decided that the due process clause does not subject the States to the necessity of having trial by jury in misdemeanor prosecutions. In that case the Supreme Court affirmed the New York courts in issuing a preliminary injunction to restrain the distribution of certain booklets alleged to be obscene. The procedure for the issuance and revocation of a license to sell liquor is prescribed in Pennsylvania by the Liquor Code. It is a privilege which has been granted by the legislature in recent years. It is not a matter which, at the time of the adoption of our Constitution, required a jury trial for its disposition. Certainly the appellant, when it elected to avail itself of this procedure, did not obtain the right to have a trial by jury in the event that the Commonwealth suspended the privilege for a proper reason. Due process has been afforded by the provisions of the Liquor Code, which provide for a hearing

before an examiner and an appeal to the Liquor Board and then further appeal to the court of quarter sessions and the appellate court. It is clear that under the law of Pennsylvania the revocation of a license or permit does not give rise to such a right. *Premier C. & B. Co. v. Pa. Alcohol Permit Bd.*, 292 Pa. 127, 140 A. 858; *Watson Appeal*, 377 Pa. 495, cert. den. 348 U. S. 879, 105 A. 2d 576. We have expressly decided that there is no right to a trial by jury for any violation of the Liquor Code: *Penelope Club Liquor License Case*, 136 Pa. Superior Ct. 505, 7 A. 2d 558.

The Pa. Liquor Control Board is given the right "From time to time, to make such regulations not inconsistent with this act as it may deem necessary for the efficient administration of this act." §207, 47 PS §2-207(h) (i).

The purpose of the Liquor Code, as stated in §1-104(a), is as follows: "This act shall be deemed an exercise of the police power of the Commonwealth for the protection of the public welfare, health, peace and morals of the people of the Commonwealth and to prohibit forever the open saloon, and all of the provisions of this act shall be liberally construed for the accomplishment of this purpose." The appellant attacks the regulation of the board which prohibits entertainers from associating with patrons. It is self-evident that the mingling of nude or scantily-clothed female entertainers with male patrons of a bar does not promote the public morals and welfare. We are of the opinion that the regulation here involved is reasonable and proper and is designed to promote the efficient and proper administration of the Liquor Code.

Order affirmed.