## Szabo Appeal

*Robert W. Valimont,* for appellant.

*William N. J. McGinniss,* Assistant Attorney General, for Commonwealth.

*Edward G. Biester, Jr.,* for Upper Southampton Township.

*Jack Sirott,* for protestants.

FULLAM, J., December 11, 1961.—On December 31, 1959, appellants filed an application with the Pennsylvania Liquor Control Board for the issuance of a new

retail liquor license for their restaurant at 70 Street Road, Upper Southampton Township. At that time, there were three vacancies in the quota of licenses for the township, and appellants' was among the total of five applications filed. Ultimately, the board refused all five applications. All of the applicants have appealed to this court, but only the present case has thus far been pressed to hearing. We are advised that two of the applications have been withdrawn.

One question common to all five of these cases was the constitutionality of the Act of August 25, 1959, P. L. 746, 47 PS §4-404, under which the board purported to act in refusing the application. We have deferred disposition of this case pending the determination of that question by the Superior Court. See Tate Liquor License Case, 196 Pa. Superior Ct. 193 (1961), in which the constitutionality of the statute was upheld, against the contention that it contained an improper delegation of legislative authority to the board.

After hearing de novo before the undersigned, held (after several continuances requested variously by the board and applicants) on June 26, 1961, we now enter the following

### Findings of Fact

1. Appellants, Vincent Szabo and Rita E. Szabo, his wife, reside at Cresson Road, Hatboro, Pennsylvania, and are the owners of a restaurant located at 70 Street Road, Upper Southampton Township, Bucks County, Pennsylvania.

2. Appellants purchased this property in November of 1959. They have operated it continuously as a restaurant since February 15, 1960.

3. Applicant, Rita E. Szabo, was a co-licensee with her brother for premises located in Buckingham, Bucks County, Pennsylvania, during the period from April

to December of 1951, and was employed as a waitress in another licensed establishment in Levittown, Bucks County, for about two years, from 1953 to 1955.

4. Neither applicant has ever been arrested, nor has either been involved in any reported infraction of the Liquor Code.

5. Both applicants bear excellent reputations, and are financially responsible.

6. Appellants' lot has a frontage of 49 feet on the southerly side of Street Road, and a depth of approximately 232 feet. The improvements consist of a two story frame building, formerly a residence, now occupied by them as a restaurant.

7. Appellants' premises comply with all of the requirements of the board, insofar as physical characteristics are concerned.

8. There are no churches, schools or other restrictive institutions within 300 feet of the subject property. The nearest school is one-half mile away. The nearest existing establishments licensed by the Pennsylvania Liquor Control Board are two licensed restaurants located in the center of the village of Southampton, both approximately one mile away from the subject premises.

9. Street Road, a two lane concrete highway, is a main arterial highway, and is heavily traveled.

10. Under the provisions of the applicable zoning ordinance, appellants' premises are located in a C-commercial district, which extends along both sides of Street Road for a considerable distance in both directions from the subject property.

11. The area within 500 feet of appellants' property is devoted to mixed residential and commercial uses. On the same (south) side of Street Road, within 500 feet of the subject property, are located four residences, one of which has a vegetable stand operation in connection therewith, and a community hall. On the

opposite side of Street Road, within a 500 foot radius of applicants' property, there are four residences, one apartment house, a residence with flower stand operated in connection therewith, and a combined residence, grocery store and branch post office.

12. Approximately 550 to 600 feet west of the subject property along Street Road are located a gasoline service station and a modern neighborhood shopping center, consisting of approximately six stores. To the east of the subject property, along both sides of Street Road, are located many large commercial enterprises, including an automobile show room, a lumberyard and building supply store, and a frozen food locker.

13. There is no evidence that the issuance of a liquor license to appellants would have any significant adverse effect upon the welfare, health, peace or morals of the neighborhood within a radius of 500 feet of the subject premises.

### Discussion

The scope of our review in this case is clear: we are to determine, from the record before this court, whether the board committed an abuse of discretion in entering its order refusing the application: Bierman Liquor License Case, 188 Pa. Superior Ct. 200 (1958); 425-429, Inc. Liquor License Case, 179 Pa. Superior Ct. 235 (1955); Zermani Liquor License Case, 173 Pa. Superior Ct. 428 (1953). The burden is upon appellants to show that the board committed an abuse of discretion: Zermani Liquor License Case, supra, at page 431. And, as stated in another context in Mielcuszny v. Rosol, 317 Pa. 91, 93-94 (1934):

"... An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality,

136

prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused."

We note at the outset that the board committed an obvious error of law, in that its own findings do not support the order entered. The board found, upon uncontradicted evidence, that applicants and the premises proposed to be licensed met all of the statutory and regulatory requirements. The board purported to base its rejection of the application upon the provisions of the 1959 amendment to the Pennsylvania Liquor Code, Act of August 25, 1959, P. L. 746, 47 PS §4-404, which provides:

"And provided further; That the board shall refuse any application for a new license . . . if, in the board's opinion, such new license . . . would be detrimental to the welfare, health, peace and morals of the inhabitants of the neighborhood within a radius of five hundred feet of the place proposed to be licensed. . . ." However, the board made no findings of fact which would bring the case within this statutory provision. The only formal finding of fact in this connection was the board's finding no. 4, "The area within a radius of 500 feet is residential." In addition, the brief opinion of the board contains the conclusion that "The granting of a license at this location would be against the peace and welfare of the residents of the community."

There is no finding or suggestion as to the effect of the proposed license on the "the inhabitants of the neighborhood within a radius of 500 feet of the place proposed to be licensed", nor is there any finding or suggestion as to the effect of the proposed license on the health or morals of the inhabitants of such neighborhood. Neither the findings nor the opinion as a whole brings the case within the statute relied on.

However, the hearing in this court was de novo: Act of April 12, 1951, P. L. 90, as amended, 47 PS §4-464. While the entire record before the board was made a

part of the record in this court, additional testimony was introduced, and our present inquiry is, whether there is anything in the entire record which would support a finding or opinion by the board that the granting of this application "would be detrimental to the welfare, health, peace and morals of the inhabitants of the neighborhood within a radius of 500 feet of the place proposed to be licensed."

It should be unnecessary to state that, in conducting this inquiry, we should proceed within the framework of the principles outlined by the Superior Court in the Tate case, supra. In that case, after upholding the constitutionality of the 1959 amendment, the court expressly negatived the idea that the legislature intended thereby to authorize indiscriminate wholesale rejection of license applications by the board, or that the amendment imposes any burden of proof upon applicant to show that the issuance of a license would be beneficial. The court stated, at page 201:

". . . Although there are people who believe that the issuance of all licenses is detrimental, and although we have said that the liquor business is unlawful except as permitted by statute, Tahiti Bar, Inc. Liquor License Case, 186 Pa. Superior Ct. 214, 216, 142 A. 2d 491 (1958), nevertheless, the Commonwealth provides by statute for the issuance of liquor licenses. By doing so, the legislature established the principle that a licensed establishment is not ordinarily detrimental to the welfare, health, peace and morals of the inhabitants of the neighborhood, *but only when the nature of the neighborhood and the nature of the place to be licensed are such that the issuance would be detrimental.*" (Italics supplied).

It seems abundantly clear that the only factors which would justify a refusal of this license under the statute would be factors (1) which can reasonably be expected to arise by reason of the licensing of the

premises, as distinguished from other types of commercial enterprises; and (2) which can reasonably be expected to have an adverse effect upon the neighborhood, as such effects and such neighborhood are particularized and defined in the statute.

As noted above, the board found that the neighborhood within 500 feet was residential in character, but it is difficult indeed to reconcile this finding with the undisputed facts. The area is zoned commercial. In the 1,000 foot stretch of Street Road in question, there are, in addition to applicants' busy restaurant, a grocery store and post office, a roadside vegetable market, a community meeting place, and a flower stand. A gasoline service station and a new shopping center are located within 600 feet of the property, and only a few hundred feet farther away, in the opposite direction on Street Road, are located a series of very substantial commercial enterprises.

The chairman of the Board of Township Supervisors, in testifying against the issuance of the license, characterized the area in question as "this limited area of stores," and as "the business section, as I know it."

We turn now to the specific objections raised by the protestants. A considerable portion of the testimony produced in opposition to the issuance of the license was to the effect that Upper Southampton Township already has a sufficient number of licensed establishments, and that no additional licenses are necessary or desirable. Under the plain language of the statute, and under the decision in the Tate case, supra, all of this evidence was beside the point. It is for the legislature, and not the board or this court, to determine the quota of licenses to be issued in Upper Southampton Township.

The protestants also introduced some evidence to the effect that appellants' restaurant would be too small to accommodate the number of patrons it would presum-

ably attract if a license were issued. All of this evidence was necessarily highly speculative, and based upon a number of assumptions of dubious validity. More important, however, is the fact that the board found, and the evidence is uncontradicted, and the protestants concede, that appellants' premises meet all of the requirements of the board.

There was some suggestion in the record that appellants' present restaurant is frequented by teenagers and school children, at least in the daytime. Assuming this to be the case (although there was no direct evidence on the point, and it is clear that the major portion of the restaurant revenues are derived from the sale of food to employees of nearby commercial and industrial establishments, for consumption off the premises), we must nevertheless give consideration to appellants' assurances that if the license is granted, no minors will be permitted on the premises. Taking into account the character of appellants, their previous experience, and their clean records, we have concluded that these assurances are sincere and can be relied upon. Moreover, the location of the restaurant, and the nature of the surrounding establishments, make it seem highly unlikely that juveniles would be attracted there. We can find no justification in the present record for assuming that if the license is granted, the licensees will violate the law or the regulations of the board.

In addition to the evidence referred to above, the protestants stress the fact that one elementary school is located a half mile from the property, two others are located about a mile away, and a consolidated high school is located about a mile and a half away; and that the school buses for all of these schools, numbering about 30 per day, pass by the proposed tavern. One of these buses stops regularly at the Peters store, approximately 300 feet from appellants' restaurant;

and a parochial school bus stops occasionally in the immediate vicinity of the restaurant.

There are several rather obvious answers to the contentions advanced by reason of these facts. Section 404 of the Liquor Code authorizes the board to refuse to license an establishment which is located within 300 feet of a school or playground. Presumably, this provision represents the legislative declaration of policy with respect to the possible adverse effects of a taproom on a school situation. If the legislature felt that the presence of a school bus stop in the vicinity would justify a refusal of a license, it would be logical to suppose that some such specific provision would have been included in section 404 of the code. Perhaps the legislature recognized that the location of a school bus stop is not fixed and unalterable, but may easily be shifted from place to place if that becomes desirable. In any event, since the legislature plainly considered a distance of 300 feet to be a sufficient separation between a school and a tavern, we see no basis for supposing that a greater distance should be required in the case of a bus stop. The evidence discloses that the regular bus stop for public school buses is located 300 feet away from the premises in question. The only indication that any school buses ever stop closer to the premises than 300 feet was the statement of Mr. Fisher, a member of the school board, that ". . . also, occasionally in the winter, when school is in session, the parochial school bus—of course the parochial school bus is not under our jurisdiction — stops almost directly in front of this particular property." It would be obviously improper to base a refusal of this license upon vague and indefinite testimony as to occasional and casual occurrences of this sort.

And finally, we do not suppose it can be seriously contended that the mere passage of school buses in

front of the property is of material consequence in applying the standards of the 1959 statute.

The remainder of the complaints voiced by the opponents to this license would apply to any commercial enterprise on the premises in question, and for the most part related as much to the continued existence of the present restaurant, as to the situation which would result if the license were granted. We are not convinced that the problems of parking, traffic congestion, lights, noise and the like, would differ materially if the license were granted. The same observation applies to the complaints about sewage disposal, yard maintenance, cleanliness, and the like. We hasten to add our conviction that all of these complaints were greatly exaggerated. The conditions revealed by this record seem to us entirely normal, and such as should be expected in any mixed commercial strip along a busy highway in a rapidly growing area. It is conceded that no complaints about these alleged nuisance conditions were ever made to appellants.

Within the 500 foot radius, there are 11 privately owned properties in addition to appellants'. Representatives of four of these properties testified in opposition to the application, but two of these operate commercial enterprises themselves. One resident testified in favor of applicants. Another resident, the chairman of the Board of Township Supervisors, testified in his official capacity in opposition to the application, but made it clear that in his individual capacity as a resident within 500 feet of the property, he had no objection, and wished to remain neutral.

We recognize that each case of this kind must be decided on its own facts, and that the matters mentioned by the Superior Court in the Tate case, supra, as sufficient to justify refusal of the license in that case do not constitute the only factors, or even the only kind of factors, which would justify such action in

other cases. Nevertheless, we feel that the contrast between the Tate case and the present case is quite significant. In the Tate case, the court noted, inter alia:

". . . There had been a fight on the applicant's premises, and a fugitive from justice was captured there. The Chief of Police thought a liquor license at the location would attract more undesirable people. This, and other evidence, warranted a conclusion that the issuance of a liquor license at the particular establishment would be detrimental. . . ." (pp. 201, 202)

There is nothing in the present record which even vaguely resembles such a situation.

We have reviewed this entire record with care, and can only conclude that there is simply no legal basis upon which either the board or this court could conclude that the issuance of a liquor license to these appellants "would be detrimental to the welfare, health, peace and morals of the neighborhood within a radius of 500 feet of the place proposed to be licensed." The action of the board in rejecting all five applications in Upper Southampton Township on substantially the same ground, and in such perfunctory fashion, strongly suggests that such action was not based upon the evidence before the board, but rather resulted from the belief that the 1959 amendment enabled the board to avoid the necessity of carefully considering each application and choosing among the five applicants for the three vacancies in the quota. If so, the board's action was more than an abuse of discretion, it was a virtual abdication of its role as an administrative agency. Be that as it may, it is clear that the law was misapplied in this case.

Since the case was heard by the undersigned alone, an opportunity will be afforded for review by the court en banc before the order becomes final.

For the reasons set forth above, we enter the following

## Conclusions of Law

1. There is no evidence in the present record that the issuance of a license to appellants for the subject premises would have any appreciable adverse effect upon the welfare, health, peace and morals of the neighborhood within a radius of 500 feet of the subject premises.

2. The Pennsylvania Liquor Control Board committed an error of law in refusing appellants' application.

3. The Pennsylvania Liquor Control Board committed an abuse of discretion in refusing to grant appellants' application.

4. The order appealed from should be reversed.

## Decree Nisi

And now, December 11, 1961, for the reasons set forth in the foregoing opinion, the order of the Pennsylvania Liquor Control Board entered September 9, 1960, refusing appellants' application is reversed, and the board is directed to issue the license prayed for, upon payment of the required fees and costs, and upon compliance with the various other formal requirements of the board. This order is entered as a decree nisi, and is to become final unless exceptions thereto are filed within 20 days after notice hereof to counsel of record.